EMIL POZZI, respondent,

*v.*

EMMA POZZI, appellant.

[Decided July 13th, 1917.]

On appeal from a decree of the court of chancery advised by Vice-Chancellor Griffin, who filed the following opinion:

The petitioner seeks a divorce from his wife on the ground of desertion.

Prior to the marriage petitioner boarded in the family of defendant's mother. The family consisted of the mother, her daughters and a son. Petitioner occupied the back parlor, and defendant a room on the floor above.

On September 28th, 1912, the marriage was solemnized by Pastor Laufer of the First Presbyterian Church of West Hobo-

ken. This change in status does not appear to have changed their mode of living; he continued to occupy the back parlor and she the room above.

The petitioner offered to pay the mother for his wife's board, $4 a week, being the amount he was paying for his own. This the mother refused, with a clear indication that she did not want her daughter to have anything to do with him.

About three weeks after the marriage Lily Wells, a sister of the defendant, seized the petitioner by the coat and pushed him out, telling him to stay out. This is corroborated by Joseph Galli, and was denied by Lillian only on cross-examination.

On October 28th, 1912, the petitioner had Recorder Vollmer, of West Hoboken, summon the defendant and her mother to appear before him. The recorder heard their statements and gave them sound advice, questioned the petitioner as to the causes of her refusal to live with her husband, and she told him she had "particular reasons of her own why she would not live with her husband," but refused to disclose them.

Thus failing to secure her return, he visited Pastor Laufer on October 29th, 1912, to enlist his good offices. The pastor visited the home of the defendant the next day, but did not see her. He next called on Recorder Vollmer to get the facts and advise with him. They concluded, as he puts it, that it would be "best to let matters run their course." In the meantime the petitioner called on him several times.

In the spring of 1913, the defendant called to see the pastor and asked him if he could get the petitioner to see her. He asked her if they had ever lived together, and she said no; and also if they lived together as man and wife, and she said no. He asked her if the petitioner had been willing, or expressed a desire to provide a home, and whether he had rented rooms; she admitted that he had. He never brought them together in his presence.

The petitioner rented rooms, and offered to rent rooms several times, and asked the defendant to rent rooms; and in one instance where he rented rooms in agreement with the defendant, he scrubbed the floors, gave her money to buy furniture, and she bought it, and after it was installed refused to take up house-

keeping there, compelling him to give up the rooms and place the furniture in storage.

Defendant visited the petitioner at various places where he resided, and upon being asked to come to him she was in the habit of saying, "You make me sick talking about living together," and frequently said, "Why don't you say that you won't live with me?"

After their marriage the petitioner says that neither occupied the same room, nor had they sexual intercourse. This is denied by the defendant, who offered her sister Lillian to prove their occupancy of the petitioner's room (the back parlor) after the marriage; but defendant and petitioner are not in accord as to the time. The defendant, prior to her marriage, did not occupy the same room with Lillian, but shared it with another sister who was not called to testify.

Although there were other sisters, a brother and her mother comprising the family, who could testify as to the room the parties occupied, and also the conditions in the household, and his removal, none except Lillian was called to support the defendant's statements.

The evidence clearly demonstrates that down to the filing of the petition in this cause the petitioner was anxious and willing to live with his wife; whereas, it is perfectly clear, that the defendant had no intention of assuming marital relations with the petitioner.

It is difficult to perceive wherein the petitioner did not do everything that could be reasonably expected from a just man bent upon procuring his wife's return.

A decree will be advised for the petitioner.

*Mr. Isidor H. Brand,* for the respondent.

*Mr. James C. Agnew,* for the appellant.

PER CURIAM.

The decree appealed from will be affirmed, for the reasons stated in the opinion filed in the court below by Vice-Chancellor Griffin.

*For affirmance*—GARRISON, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, WHITE, HEPPENHEIMER, WILLIAMS, TAYLOR, GARDNER—13.

*For reversal*—None.